Ready? Good morning. Yes. If it pleases the Court, my name is Jesse Meneo, and I am the attorney for the petitioner, Mr. Fernando Diaz. And so, Your Honors, the Court instructed the parties to discuss two recently decided BIA cases, Medina-Jimenez and Abshokko. Now, the Medina-Jimenez case raises the same question that this current case presents to the Court. The Medina-Jimenez case was about a year or two in front of this current case, and this Court sent it back to the BIA in order to resolve the question at hand today administratively in the first instance. So the issue presented to the Court today is whether or not an Oregon contempt judgment will have immigration consequences for purposes of eligibility for non-LPR cancellation. And so the — to be eligible for non-LPR cancellation, among other things, an alien can not be convicted of a crime described in 8 U.S.C. 1227. And so the Oregon courts have uniformly held that contempt in Oregon is not a crime. And so Respondent argued below, and Mr. Medina-Jimenez also argued below, that because Oregon contempt is neither a civil contempt, is neither civil nor criminal contempt, but is a unique power inherent to the Court, that it consequently would not be a conviction for immigration purposes, and therefore it would not disqualify the petitioner from eligibility for LPR cancellation. In Medina-Jimenez, the BIA held that under the definition of conviction in the Immigration and Nationality Act, that that definition could be used in order to capture what is neither a civil nor a criminal judgment and deem it to be a criminal conviction for immigration purposes. And so if we look at the history of that definition, and it's very clear if you look at the committee conference reports of IRAIRA, which enacted the definition, if you look at that provision, what you'll find is that the definition wasn't meant to be a substantive definition. The definition wasn't meant to be a procedural definition. The definition was meant to be an evidentiary definition that would guide deportation officers and guide trial attorneys in obtaining criminal documents from the various criminal courts around the country in order to prove whether or not an alien was actually convicted of a crime. Now, that's the historical context of the definition. Twenty years later, the government wants to expand the scope of the definition to change it from an evidentiary definition that's meant to solve evidentiary problems in order to change it into a substantive definition that can now capture not only criminal judgments, but in this case, it will capture quasi-criminal, quasi-civil judgment. And it also has the potential of capturing contempt decisions that come out of juvenile courts. And so the Court can certainly take judicial notice of Oregon Statute 419A.180. And so an Oregon juvenile court has the ability to issue protective orders, and an Oregon juvenile court has the ability to issue contempt judgments against juveniles who violate those protective orders. So what is the standard for this Court's interpretation of immigration nationality act's definition of conviction? I think your argument is that Section 1227A2E, small i's, for violation of protection order does not require a conviction. How does this reconcile with the language of Section 1229BB for cancellation of removal? Could you repeat the question, Your Honor? Well, your argument is that 1227A2E, two little i's, for violation of protection order does not require a conviction. Yes, Your Honor. That's your argument. Yes. How does this reconcile with the language in Section 1229BB for cancellation of removal? Yes. So the two different the two provisions are distinct. And so the first provision that you were citing, 1227, it's the deportation provision. It is procedurally and statutorily distinct from the relief phase. And so within the context of the deportation portion of the trial and the deportation analysis, there's no requirement for a conviction. In contrast to that, in the relief phase, and that's the issue before the Court, in the context of 1229B, the applicant was asking for relief, which is an entirely different statute, and that statute is plain and clear on its face that a conviction is required. And so the — I believe that answers your question. On the Oregon statute, though, he could get jail, he could go to jail more, right? He's on probation, right? Yes. For a period of time. So I guess, what's your support for the argument that a conviction for immigration purposes requires a judgment in a criminal proceeding? For immigration purposes, can there be a finding of a conviction from a non-criminal proceeding? So I mean, you know, if you send someone to jail, that certainly sounds like they're convicted of something. Well, Your Honor, there's two arguments. And so the first argument is the plain language of the statute. In the deportation context, it doesn't require a conviction. In contrast, in the relief context, to be eligible for the benefit or to be deemed ineligible for the benefit, you have to have a conviction described in the subsequent sentences. The other sort of guiding principle for why the Court should rule in favor of the Petitioner is that in Mathis, the Court, the Supreme Court was concerned about errors associated with the categorical analysis. And in this particular instance, the unique problem that's going to be presented, especially with the Oregon contempt provision, is that it looks both punitive and non-punitive. Because depending on whether or not the prosecutor wants to impose jail time or not impose jail time, the standard of the burden of proof on behalf of the prosecutor is going to change. And so if jail time is required, then they've got to be able to produce the or demonstrate the charges beyond a reasonable doubt, whereas if they're not seeking jail time, then it's just clearing convincing evidence. So, one, the statute creates the difference. Because relief is distinct from deportation and the statute is distinct, a conviction is required. And again, the guiding, the third guiding principle in Mathis wants to impose convictions and the categorical analysis in order to avoid situations where there's a risk of erroneous deprivation of a benefit. But the ground has shifted. But this is a benefit that the ground has shifted on. I understand you couldn't have anticipated when you filed your brief a year and a half ago, whenever. But we now have these two decisions by the BIA, which, among other things, seem to say the categorical approach isn't the approach that we follow here. So what do we do with these decisions? Is it your burden at this point to establish that the interpretations are unreasonable under the statute? Or what is it you're trying to persuade us of? So in the first instance, Respondent doesn't actually have an issue with Obchocko , which is the case that deals with the categorical analysis. Petitioner just says that it doesn't apply to him. But Medina-Gimenez seems to be a problem for you. I think that's what we're talking about. Yes. So that is on point. And it's precisely the issue that we're presenting here. And so what Respondent says is the government is expanding the scope of the definition. All right? This was never meant to be a substantive definition. It was meant to be an evidentiary definition. And if the government is allowed to expand the use of this definition, a whole panoply of judicial proceedings are going to be held here all day. When you say government, are you meaning BIA? I mean, is your attack on whether the BIA's decision and Medina is a reasonable interpretation, is an acceptable interpretation to which we must give deference under Chevron? I'm saying it's unreasonable because it leads to unreasonable results. So your argument is that it's not entitled to Chevron deference. We should reject it as being inconsistent with the statute. Give me a second. Yes. I'm saying it is unreasonable because it requires a conviction. And this isn't a conviction. The Oregon courts are unanimous in saying that contempt is not a conviction. I mean, another way of looking at the question is you can go through the matter of Islamazar door, which says that it has to be a genuine criminal proceeding. And I think this Court can go through that door and use that decision in order to find that because this is not a genuine criminal proceeding, there's no conviction and the Petitioner is not ineligible. On the other hand, if the Court tries to go through the definition, it's an unwieldy vehicle in which to make the decision or render the decision, because it was never intended to be used substantively, it was meant to be used evidentiarily. All right. Do you want to reserve any time for rebuttal? I'll go ahead and reserve 4 minutes, Your Honor. Okay. Thank you. May it please the Court, Tim Remnitz, on behalf of the United States Attorney General, Jefferson B. Sessions III, in this immigration case, Petitioner, an inadmissible alien, was found ineligible for cancellation and removal as an alien who had been convicted of an offense described in 1227A2Eii. Well, I have a question. In your August 28, Jay, letter, you withdrew your argument that section 1227A2Eii was a violation of a protection order, does not require a conviction. So do you agree with that, a finding of a conviction is necessary for determining cancellation of removal under 1229BB? No. There's two working parts, and that's why the government initially briefed it before these two decisions were issued by the board. So what the government was initially following was Garcia Hernandez's Seventh Circuit case and the Supreme Court's case in Nijuan, which state, or we believe, leads to the reasoning that a conviction is not required to remove someone for violation of a protective order, because that statute does not mention the word conviction. And so that was the initial argument that we don't need a conviction whatsoever in these proceedings, even in the cancellation context. However, the board subsequently issued a decision which stated, one, that agreed with the government's argument that there is no conviction required for removability for a protective order violation, but otherwise stated that you do need a conviction in the relief context, that the substantive definition of conviction still applies for cancellation removal because the cancellation removal statute specifically includes that word conviction, so it must give some meaning to a term that's specifically defined in the INA as conviction is under 1101A48A and B. So what are you arguing? Why do you win now? So the government argues that the BIA correctly found the Petitioner was ineligible for relief because of this protection order violation, because, one, it constitutes a conviction, as the board has explained what a conviction means under matter of Islamazaar. And second of all, you don't have to apply the categorical approach to find what portion of the protective order you violated, because the statute doesn't require that protective order statute. So we have both of them. You're saying the Medina. Is that the Medina Jimenez? Correct. So it describes a two-tiered inquiry in Medina Jimenez. One, is there a conviction for immigration purposes? And that's the matter of Islamazaar cases, defining what it means to have a conviction for Federal immigration purposes. And once that's satisfied, you move on to the removal statute, the protective order statute. And that's also satisfied in this case. That's the government's argument, is that the government prevails because this judgment of contempt of court equals a definition of a conviction for Federal immigration purposes. And when you turn to the record of conviction in this case, or the reliable evidence in this case, it shows, and Petitioner does not contest, that he violated the portion of protective order that protects against credible threats of violence. That is the stay-away portion of the protective order in this case. Well, should we give deference to the BIA on this, or should we do our own independent analysis like you argued previously? I believe at this point, now, the Board has issued present decisions interpreting these two statutes. The Court owes deference to these decisions, because they are both interpreting INA provisions. The first, definition of a conviction. And the second, this protective order statute, where it has language unlike other statutes, which has, well, first, does not have a conviction required. And, two, it seems to refer to specific consequences or specific circumstances, excuse me, at a particular time. So the challenge, it appears to me, is posed by the fact that the 1229 provision includes the word convicted. Why doesn't that require what we would expect to be a criminal conviction? I mean, there is no Oregon document that declares that Petitioner has been convicted or convicted. So how does that fit within the 1229 provision? So it fits within that provision under the Board's precedent in manner of Islamazar defining what a conviction means. So we went to legislative history earlier in Petitioner's argument. When ARREA was adopted in 1996, it did have these House conference reports discussing why they're adopting this uniform definition of conviction. And it was because of all the vagaries in the 50 states' laws regarding what it considers a conviction, what it defines as a criminal proceeding. There was just so much disparity amongst the states that they had to create this uniform definition of what a conviction is. So when ARREA enacted this conviction definition, it simply says at the beginning, judgment of guilt entered by a court. And so there was question initially whether or not that meant any judgment of guilt, civil, or criminal proceedings. So the Board interpreted that matter Islamazar because it was not clear, it was ambiguous whether it applied to criminal and civil. They interpreted it to mean a criminal proceeding or a criminal proceeding in nature. And that was to respond to all the differences in state laws, like in Oregon, where they have labels for things that, for contempt of court, like that do not match up to criminal or civil, but otherwise have all the criminal procedural safeguards. And that's the case that the government cited in our brief, State v. Houskins. State v. Houskins specifically states that these contempt of court proceedings have every single criminal procedural safeguard that something is labeled a criminal proceeding has. There's no difference. They apply the beyond reasonable doubt proceedings. They get a right to counsel. They have a charging document that has all the same requirements as a criminal charging document. There's no other provision in Oregon law that punishes violation of protective order. So there's no risk of double jeopardy. In all ways, this is a criminal proceeding, just not in name. And that's what the Board is responding to in matter of Islamazar. And that's the first tier under matter Medina Jimenez. Do you have a conviction definition? Is that definition met for immigration purposes? And second of all, you move to the particular grounds of the conviction in this case, which here, though, is a statute that does not require a conviction. It is looking at conduct. So it can include a conviction. So 1227A2EII can include convictions for violation of a protective order, but it also does not require that. You could have a — ask what a judge has determined in a proceeding. And so you have that meaning that it can also apply to situations like that where there is no conviction, but a judge has found this person violated protective order that protected against credible threats of violence. So you're asking us to conclude that we should give deference to the more recent decisions of the BIA. Under Chevron, because the interpretation offered by the BIA culminating in Medina Jimenez is not inconsistent, not unreasonable under the statute. Correct. And it appears that Petitioner does not take — he does not challenge matter of Pshatko as unreasonable. At least that was my understanding of Petitioner's argument. So one of these tiers is already met. That's the second tier described in Medina Jimenez, that this protective order statute does not require a conviction. So it's someone who has these documents in the record, reliable evidence such as here we have a plea agreement. We have the judgment of contempt. We have the protective order itself. And we have those reliable documents in the record that that establishes deportability under this protective order statute 1227A2Eii. So it appears to be concession that that matter of Pshatko is warranted deference. It's a reasonable interpretation of the statute. As the Seventh Circuit even concluded before the Board reached this issue, and I believe there's a Third Circuit decision named Reed that also concluded the same. So the only we have left is deference to Medina Jimenez whether or not when you're working with these two tiers, the cancellation statute and a deportation ground, whether a conviction is also required. And I believe that is a reasonable interpretation because it gives meaning to that term conviction as specifically defined in the INA throughout all immigration proceedings. Unless the panel has other questions, the government will rest. All right. We don't appear to have additional questions. Thank you. So thank you, Your Honor. So just again on the Chevron question and whether or not deference is warranted here, if the analysis is looked at strictly in terms of the definition of conviction, then a Petitioner would argue that deference isn't warranted here on the facts, in the sense that the Oregon contempt statute is clearly held not to be criminal in nature. And on that basis, it was unreasonable for the BIA to apply the ineligibility statute for cancellation to this case. Looking at Islamazar, though, in terms of how its mechanics would work, Respondent would argue that this case could or, I'm sorry, the Petitioner would argue that this case could be resolved within the context of Islamazar in determining, to ask the BIA to determine whether or not the proceedings were a genuine criminal proceeding. The Court could certainly look at case law on that particular proceeding and the State's interpretation of whether or not that particular proceeding did or did not constitute a criminal matter. And again the BIA's position is that the criminal piece isn't necessarily So I don't know that we're quite as interested in what Oregon says as to whether it was criminal. The question is whether the BIA's interpretation of convicted as encompassing non-criminal determinations that have certain elements, the constitutional protections, the beyond reasonable doubt standard of proof, whether that qualifies as conviction under the INS. So I'm not sure the Oregon decision, I'll accept as a proposition Oregon doesn't call it criminal. Let me pose it this way, Your Honor. The Medina Jimenez case is problematic because I think what happened was that the deportation tail wagged the relief dog, all right? And they said because we, you know, arrived at the decision that we arrived at in Abshotko, well, we're just going to do the same old thing that we did in Abshotko in the case of Medina Jimenez. But that's, I've been trying to focus on what the positions are now because it seems to me your position has to be that the second step in Medina is inconsistent, is not an acceptable interpretation under the statute, and if that's the case, why not? Because they're conflating the issues, Your Honor. They're conflating the relief with the removal. They're conflating the absence of conviction language in the deportation portion of the statute with the clear presence, plain language of conviction in the relief section. So 1229 does include the word convicted. It requires a conviction, Your Honor. Yes. And that's basically what your argument stands on. Yes, Your Honor. If there's no further questions. All right. Thank you both for your argument. This matter will stand submitted.
judges: Fisher, Clifton, Callahan